**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **COACH, INC.**<br>**and COACH SERVICES, INC.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 5:11-CV-371(MTT)** |
| | ) | |
| **GAIL D. BECKA, d/b/a HAIR COTTAGE,** | ) | |
| **d/b/a GAGAS GIFT BOUTIQUE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>ORDER</u>

This matter is before the Court on the Plaintiffs' Motion for Summary Judgment. (Doc. 18). For the following reasons, the Motion is **GRANTED** in part and **DENIED** in part.

## I.  FACTUAL BACKGROUND

Plaintiffs Coach, Inc. and its wholly owned subsidiary, Coach Services, Inc., ("Coach") collectively own the Coach brand. Coach manufactures, markets, and sells luxury fashion accessories, including handbags, wallets, eyewear, footwear, jewelry, and watches. Coach "maintains a tight distribution network" and sells its goods "only though official Coach websites, retail stores, outlet stores, and large well-known department stores." (Doc. 18-1 at ¶ 3). Coach owns a number of federally registered trademarks and copyrights that it uses on its goods.

Defendant Gail D. Becka owns and operates The Hair Cottage and the boutique located within, Gaga's Gift Boutique, in Macon, Georgia. Coach alleges that Becka

ordered counterfeit Coach items from China and sold them in her store.  Becka is not authorized to sell Coach products, and her distributors are not affiliated with Coach. (Doc. 18-1 at ¶¶ 8, 10).

On May 7, 2011, private investigators hired by Coach, Geanie Johansen and Norman Johansen, conducted a survey of The Hair Cottage to determine the type and amount of counterfeit Coach items being offered for sale.  (Doc. 23 at ¶¶ 6, 7).  There were approximately forty to fifty Coach handbags on display, ranging in price from $275.00 to $449.00, as well as other Coach products, including wallets and shoes. (Doc. 18-1 at ¶ 13).  Becka gave Norman Johansen a guided tour through her store and explained to him that she could sell her bags for lower prices than other retailers because she had a "friend" who traveled to China and set her up to deal directly with a factory.  (Doc. 18-1 at ¶ 13).  Becka further explained that once every three months her "friend" traveled to China and returned with new inventory for her to sell.  (Doc. 22 at ¶ 15).  Becka also obtained counterfeit Coach merchandise through the website, www.timemarkmall.com.  (Doc. 18-1 at ¶¶ 8, 9).  The investigators observed alleged counterfeit products from other luxury brands in Becka's store as well.  (Doc. 18-1 at ¶ 15).  Geanie Johansen later reviewed photographs taken at the store and determined the Coach items were counterfeit.  (Doc. 23 at ¶ 8).

On August 12, 2011, Geanie Johansen returned to The Hair Cottage and purchased a purse bearing Coach trademarks for $150.00.  (Doc. 23 at ¶ 11).  Becka provided Geanie Johansen with a Coach Registration card, Coach Story Book, and Coach Care Instruction card, also bearing counterfeit trademarks.  (Doc. 23 at ¶ 12). On this visit, Geanie Johansen observed approximately sixty to seventy Coach

handbags, twenty-five to thirty Coach bracelets, and Coach shoes on display for sale. (Doc. 23 at ¶ 14).

On September 13, 2011, Geanie Johansen returned once more to The Hair Cottage and served Becka with cease and desist letters from brand holders Chanel and Louis Vuitton. (Doc. 18-1 at ¶ 18). Johansen identified herself as an authorized Coach representative and told Becka that the Coach items displayed in her store were counterfeit. (Doc. 23 at ¶ 16). Becka then surrendered all counterfeit Coach items in her possession to Johansen. (Doc. 18-1 at ¶ 18). The two hundred and twenty-four counterfeit Coach items surrendered included sixteen handbags, twelve pairs of shoes, one keychain, three pieces of jewelry, seventy registration cards, seventy storybooks, and fifty-two care cards. (Doc. 23-4).

Coach filed this action on September 16, 2011, alleging trademark infringement, trademark counterfeiting, and copyright infringement.[1] Coach moved for summary judgment on those claims. Becka did not file a response to Coach's Brief in Support of its Motion or Coach's Statement of Material Facts. Thus, the Court finds that the facts as set forth by Coach in its Statement of Material Facts as to Which There is No Dispute (Doc. 18-1) are admitted. M.D. Ga., L.R. 56. The Court has also reviewed the record and finds the facts undisputed.

---

[1] Coach also alleged claims of false designation of origin, false advertising, and trademark dilution in its Complaint (Doc. 1) but failed to address those claims in its Motion for Summary Judgment. Thus, the Court will not consider those claims.

## II.  DISCUSSION

### A.  Motion for Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Info. Sys. & Networks Corp.*, 281 F.3d at 1224.  The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

"'If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment.'"  *Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1371 (S.D. Fla. 2009) (quoting *Four Parcels*, 941 F.2d at 1438).  The moving party must carry its burden by presenting "credible evidence" affirmatively showing that, "on all the essential elements of its case, on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  *Four Parcels*, 941 F.2d at 1438.  In other words, the moving party's evidence must be so credible, that if not controverted at trial, the party would be entitled to a directed verdict.  *Id.*

"If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'comes[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original).  However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Thus, the Court "'can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists.'" *Strickland v. Norfolk S. Ry. Co.*, --- F.3d ----, 2012 WL 3640797 (11th Cir.) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1992)).

### B.  Trademark Infringement

Trademark infringement under the Lanham Act occurs when a person, without the registrant's consent, "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a).  To prevail on this action, a plaintiff must establish that: (1) he possesses a valid mark; (2) the defendant used the mark; (3) the defendant's use of the mark occurred "in commerce"; (4) the defendant used the mark "in connection with the sale ... or advertising of any goods"; and (5) the defendant's use of the mark was likely to confuse consumers.  *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008).  "[A] showing of intent or

bad faith is unnecessary to establish a violation of § 1114(1)(a), or to seek remedies pursuant to § [1117]."  *Chanel, Inc.*, 931 F.2d at 1476.

Coach alleges that the counterfeit Coach items sold by Becka featured eight counterfeit Coach trademarks[2] in violation of the Lanham Act.  The eight trademarks at issue are federally registered and still in use.[3]  Thus, Coach has satisfied the first element of the five-prong test.  The uncontested affidavits of Geanie Johansen and Norman Johansen show that they observed counterfeit items bearing the Coach trademarks and on display for sale in Becka's store.  Furthermore, Becka herself provided receipts to Coach showing that she sold the counterfeit Coach goods.  Therefore, the second, third, and fourth prongs are also satisfied.

Generally, the sale or advertising of counterfeit goods causes consumer confusion and precludes the need to undertake a likelihood of confusion factor analysis.[4]  *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) (declining to conduct a traditional likelihood of confusion factor

---

[2] A counterfeit mark "is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  Coach has provided sufficient (and uncontested) evidence that the Coach items sold by Becka were, in fact, counterfeits.

[3] Specifically, the trademarks at issue are: (1) "COACH," registration number 2,451,168; (2) "COACH & TAG DESIGN," registration number 2,088,707; (3) "CC & DESIGN (Signature C)," registration number 2,626,565; (4) "CC & DESIGN (Signature C)," registration number 2,822,629; (5) "CC & DESIGN (Signature C)," registration number 2,822,318; (6) "COACH OP ART & Design," registration number 3,696,470; (7) "COACH LEATHERWARE EST. 1941 [Heritage Logo]," registration number 3,441,671; and (8) "COACH," registration number 1,071,000.

[4] Courts in this circuit use a multifactor test to determine the likelihood of confusion between two marks by "evaluating the following seven factors: (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public."  *Tana v. Dantanna's*, 611 F.3d 767, 774-75 (11th Cir. 2010) (internal citation omitted).

analysis, noting that "counterfeits, by their very nature, cause confusion"). Thus, the Court finds that a multifactor analysis is not necessary under these circumstances, and the nature of the counterfeit goods at issue is sufficient to establish the fifth prong (i.e., a likelihood of confusion). Coach has provided sufficient evidence to support their trademark infringement claim against Becka for the sale of counterfeit Coach goods. Accordingly, summary judgment in favor of Coach is appropriate on its trademark infringement claim.

### C. Trademark Counterfeiting

To prevail on a trademark counterfeiting claim, a plaintiff must show that the defendant violated 15 U.S.C. § 1114(1)(a) by infringing a registered trademark and that the defendant's use of the mark was intentional and with knowledge that the mark was a counterfeit pursuant to 15 U.S.C. § 1117(b). *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994). In the Eleventh Circuit, "willful blindness" is sufficient to satisfy § 1117(b)'s intent requirement. *Chanel, Inc.*, 931 F.2d at 1476 ("[W]illful blindness could provide the requisite intent or bad faith."). "Under the doctrine of willful blindness, 'knowledge can be imputed to a party who knows of a high probability of illegal conduct and purposefully contrives to avoid learning of it.'" *Nike Inc. v. Variety Wholesalers, Inc.*, 274 F. Supp. 2d 1352, 1369 (S.D. Ga. 2003) (quoting *Williams v. Obstfeld*, 314 F.3d 1270, 1271 (11th Cir. 2002)). Willful blindness is a subjective standard and "requires more than mere negligence or mistake." *Id.* at 1370 (internal citations omitted).

The Court has found that Becka infringed registered marks in violation of 15 U.S.C. § 1114(1)(a). Thus, the Court must determine whether Becka's conduct was

intentional or willfully blind.  Coach relies on an admission made in Becka's Answer (Doc. 3) regarding the source of the goods to show Becka was, at least, willfully blind. Coach argues that Becka's knowledge that the products came from China shows that "she should have inquired further as to the authenticity, and realistically that she knew she was buying fakes to resell."  (Doc. 18-2 at 7).

Although Becka's knowledge of the goods' source of origin could support an inference of willful blindness, the Court cannot find that Becka's knowledge of this fact alone compels finding that she acted with intent.  *See Chanel, Inc.*, 931 F.2d at 1476 (stating that undisputed facts that create an inference of willful blindness or knowledge "do not so clearly compel that conclusion as to warrant finding intent as a matter of law").  If anything, Becka's Answer considered as a whole indicates that she was neither aware of a high probability of illegal conduct nor purposefully contrived to avoid learning of it.  Becka stated that the website she ordered the goods from "looked legitimate" and that she believed the bags to be real because they had "numbers inside" of them.  (Doc. 8 at 1).  Becka also stated that the company she ordered the goods from replaced any bags with defects.  Coach has failed to satisfy its burden of showing that there is no genuine dispute on the issue of intent.  Accordingly, summary judgment is denied on Coach's trademark counterfeiting claim.

### D.  Copyright Infringement

To establish direct copyright infringement, a plaintiff must establish two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). In a judicial proceeding, "the certificate of a registration made before or within five years

after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). "Once the plaintiff produces a certificate of registration, the burden shifts to the defendant to establish that 'the work in which copyright is claimed is unprotectable (for lack of originality).'" *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010) (quoting *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996)).

Coach alleges that Becka infringed one of its registered copyrights, namely its Horse and Carriage Heritage Logo.[5]  This copyright was first published on February 1, 2007 and registered on April 13, 2010.  Becka has not attempted to establish that the work is unprotectable in any way.  Thus, the Court finds that Coach has established ownership of a valid copyright.

To satisfy the second element, "a plaintiff must establish, as a factual matter, that the alleged infringer *actually copied* plaintiff's copyrighted material." *Id.* (emphasis added); *see also Bateman*, 79 F.3d at 1541 ("To prove actionable copying, the plaintiff must first establish, as a factual matter, that the alleged infringer 'actually used the copyrighted material to create his own work.'") (internal citation omitted).  A plaintiff may prove copying by direct evidence, which is rare, or indirect evidence.  *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010).  If the plaintiff must rely on indirect evidence and cannot show that the defendant had access to the copyrighted work, then the plaintiff must show that the defendant's work is "strikingly similar" to the copyrighted work.  *Id.* (citing *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007)).  If the defendant did have access to the work, then the plaintiff only needs to

---

[5] The registration number for the Coach Horse and Carriage Heritage Logo is VA0001714051.

show that the two works are "substantially similar." *Id.* (citing *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000)).

Coach alleges that Becka infringed its copyright when she offered for sale and sold a purse bearing the Horse and Carriage Heritage Logo to one of Coach's investigators, Geanie Johansen.  Coach, however, has not alleged that Becka actually copied its copyright either through direct or indirect evidence.  Coach has also failed to properly state a claim for contributory copyright infringement.  A "contributory infringer" is "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another."  *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990) (internal quotations and citations omitted).  As discussed above, Coach has not alleged facts sufficient to demonstrate Becka's actual or constructive knowledge of the infringing activity..  Accordingly, summary judgment is denied on Coach's copyright infringement claim.

## III. REMEDIES

### A.  Statutory Damages for Trademark Infringement

Having established liability for trademark infringement, the Court must determine the amount of damages to award.  As an alternative to actual damages, a plaintiff may elect to recover statutory damages "[i]n a case involving the use of a counterfeit mark ... in connection with the sale, offering for sale, or distribution of goods or services … at any time before final judgment is rendered by the trial court."  15 U.S.C. § 1117(c).  The statute authorizes an award in the amount of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods … as the court considers just."  *Id.*  For

the willful use of a counterfeit mark, the statute authorizes a maximum award of "$2,000,000 per counterfeit mark per type of goods" sold.  *Id.*

Because § 1117(c) provides little guidance on how to determine statutory damages, district courts have broad discretion in setting an amount.  *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 156-57 (E.D.N.Y. 2010) (internal citations omitted).  The award of statutory damages may exceed actual damages, but it should not "constitute a windfall for prevailing plaintiffs."  *Id.* at 157 (internal citation omitted).  Statutory damage awards do, however, serve deterrent as well as compensatory purposes.  *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1221 (S.D. Fla. 2004).

Coach has exercised its right to seek statutory damages rather than actual damages.  Coach requests statutory rather than actual damages because the sales receipts obtained from Becka may not adequately reflect the total sales of all counterfeit Coach items, and Coach "cannot adequately identify the type or quantity of differing marks infringed" in the receipts actually produced.  (Doc. 18-2 at 8).  Coach has identified eight counterfeit marks found on items purchased by the investigator and surrendered by Becka.  (Docs. 19, 19-1, 19-2, 19-3).  Coach requests $100,000 per mark[6] for a total of $800,000.  Coach also states that this amount should be trebled under 15 U.S.C. § 1117(b) to yield a statutory award of $2,400,000.  Coach suggests that such a large award is warranted here because "the level of intended distribution is substantial," and the damage to Coach's goodwill "would be equally exorbitant."  (Doc.

---

[6] In arriving at the $100,000 per mark figure, Coach relies solely on a recent case where it received the same amount.  *See Coach, Inc. v. Reggae Hot Spot, Inc.*, 2010 WL 5536521 at *2 (S.D.N.Y.), *adopted by* 2011 WL 43462 (S.D.N.Y.) (analyzing similar cases awarding a $100,000 baseline in that district).

18-2 at 9).  The Court believes the amount of statutory damages requested to be grossly disproportionate to any reasonable estimate of actual damages.

As a preliminary matter, Coach is not entitled to trebled damages under § 1117(b).  This subsection provides that "the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages" for the intentional use of a mark when "assessing damages *under subsection (a)*."  15 U.S.C. § 1117(b) (emphasis added).  Subsection (a) of § 1117 refers to an award based on actual damages, which Coach has not requested.  A statutory damage award under § 1117(c) takes intentional conduct into account by increasing the per mark baseline award to a maximum of $2,000,000 rather than trebling the award.  Therefore, an award of trebled statutory damages under § 1117(b) is inappropriate.  Even if Coach were seeking actual damages, it has not shown that Becka's conduct was intentional.  Thus, the Court must choose a more appropriate baseline to determine statutory damages.

In assessing statutory damages under the Lanham Act, courts often consider the Copyright Act's analogous provision for statutory damages, 17 U.S.C. § 504(c).  *See, e.g., Nike, Inc. v. Austin*, 2009 WL 3535500 at *4 (M.D. Fla.); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003).  "Under the Copyright Act, courts look to factors such as: (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant."  *Tiffany (NJ) Inc.*, 282 F. Supp. 2d at 125 (internal quotations and citation omitted).

Furthermore, statutory damages are meant to serve as a substitute for actual damages, so the Court will evaluate whether the requested damages "bear some relation to the actual damages suffered." *Coach, Inc. v. Diva Shoes & Accessories*, 2011 WL 1483436 at *6 (N.D. Ca.) (internal citation omitted).

Several of the factors listed above are particularly useful in assessing the amount of statutory damages here.  First, the profits at issue demonstrate that actual damages would likely be significantly less than the amount of statutory damages requested by Coach.  Becka produced a total of eighty-seven receipts documenting the sale of counterfeit Coach items.  (Doc. 21 at ¶ 5).  The receipts reflect the time period from July 2008 to August 2011[7] and total $12,400.15 in sales.  (Doc. 21 at ¶ 5).  Although the wholesale prices that Becka paid to her distributors are not known, her profits, of course, would have been less than her gross sales.  Furthermore, Becka was operating out of a single small retail location, and Becka did not sell or advertise the counterfeit items on the Internet.  Thus, the Court cannot find that eighty-seven sales over a three-year period reflect the kind of substantial distribution claimed by Coach, nor do they merit an award of the amount of statutory damages requested.

Second, Becka's unintentional infringement and her cooperation in the matter are also particularly relevant.  As discussed above, Coach has failed to establish that Becka's conduct was intentional or willfully blind.  When told by the investigators that the Coach items in her store were counterfeit, Becka voluntarily surrendered all Coach items in her possession and ceased her infringing conduct.  Becka also made an attempt to comply with the discovery requests by producing the receipts.

---

[7] Coach has not alleged that Becka's sale of counterfeit Coach products began prior to July 2008.

Other courts have awarded significantly lower awards to Coach for similar infringing conduct, even when the conduct was willful.  *See e.g., Coach, Inc. v. Sassy Couture*, 2012 WL 162366 at *11 (W.D. Tex.) (awarding $15,000 per mark where conduct was willful, and the defendants sold the counterfeit items on their website); *Coach, Inc. v. Ocean Point Gifts*, 2010 WL 2521444 at *7-8 (D.N.J.) (awarding $10,000 per mark where conduct was willful, and the defendant sold the counterfeit items in a retail store).  The Court concludes that an award of $2,000 per mark would more appropriately compensate Coach for the infringing conduct.  Accordingly, the Court finds that Coach is entitled to an award of $16,000.

## B.  Permanent Injunction

In addition to damages, Coach requests a permanent injunction enjoining Becka from further infringement of Coach trademarks.  The Lanham Act provides courts with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable."  15 U.S.C. § 1116(a).  "[A] plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction."  *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.,* 522 F.3d 1200, 1208 (11th Cir. 2008) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

First, grounds for irreparable injury can include loss of goodwill or the possibility of confusion.  *Ferrellgas Partners, L.P. v. Barrow*, 143 Fed. Appx. 180, 190 (11th Cir.

2005).[8]  "A plaintiff need not show that the infringer acted in such a way as to damage the reputation of the plaintiff.  It is the loss of control of one's reputation by the adoption of a confusingly similar mark that supplies the substantial threat of irreparable harm." *Id.* at 191.  Given that the counterfeit goods bore marks substantially similar, if not identical, to Coach's registered trademarks, Coach had made a sufficiently strong showing of the possibility of confusion so that irreparable injury is established.

Second, monetary damages are generally inadequate to compensate for past trademark infringement or the possibility of future infringement.  *See Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989) ("It is generally recognized in trademark infringement cases that (1) there is not [an] adequate remedy at law to redress infringement and (2) infringement by its nature causes irreparable harm.").  Third, the balance of hardships clearly favors Coach because Becka's sale of counterfeit Coach items was unlawful.  Fourth, the public interest is particularly strong in preventing the sale of counterfeit items because the public "deserves not to be led astray by the use of inevitably confusing marks."  *Id.*  Accordingly, the Court finds that Coach is entitled to a permanent injunction.

### C. Attorney's Fees

Coach also seeks an award of attorney's fees pursuant to 15 U.S.C § 1117(a).[9] The Lanham Act provides that a court may award attorney's fees "in exceptional cases." 15 U.S.C § 1117(a).  The Eleventh Circuit has characterized an "exceptional" case as

---

[8] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2.

[9] Coach sought investigative costs in its Complaint but did not request them in its Motion for Summary Judgment.  Thus, the Court declines to award Coach investigative costs.

one involving malicious, fraudulent, deliberate, or willful conduct. *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994). "Although a case may rise to the level of exceptionality, the decision to grant attorney fees remains within the discretion of the trial court." *Id.*

Coach has failed to demonstrate that Becka infringed Coach's trademarks willfully or deliberately. Thus, this is not an exceptional case. Even if Becka's conduct was willful or deliberate, Coach has submitted no evidence on which to base such an award. Accordingly, the Court finds that an award of attorney's fees is inappropriate.

## IV. CONCLUSION

For the foregoing reasons, Coach's Motion for Summary Judgment is granted in part and denied in part. Summary judgment is **GRANTED** as to Coach's trademark infringement claim. With regard to Coach's trademark counterfeiting and copyright infringement claims, summary judgment is **DENIED**. The Court will award a judgment of $16,000 and issue a permanent injunction.

**SO ORDERED**, this the 2nd day of November, 2012.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT